UNITED STATES of America, Plaintiff-Appellee,

v.

Franklin Delano GIPSON, Defendant-Appellant.

No. 76–3048.

United States Court of Appeals, Fifth Circuit.

June 6, 1977.

Richard Kempaner, Huntsville, Ala. (court appointed), for defendant-appellant.

Wayman G. Sherrer, U. S. Atty., L. Scott Atkins, Bill L. Barnett, Asst. U. S. Attys., Birmingham, Ala., for plaintiff-appellee.

Before WISDOM, CLARK and RONEY, Circuit Judges.

WISDOM, Circuit Judge:

This appeal presents novel and difficult questions concerning the nature and scope

of a federal defendant's right to a unanimous jury verdict. The appellant, Gipson, challenges his conviction of violating 18 U.S.C. § 2313,[1] which prohibits the sale or receipt of stolen vehicles. He bases his challenge on the ground that his right to a unanimous jury verdict was infringed. Because we agree with Gipson that this right was abridged at his trial, we reverse his conviction.

## I.

Gipson was charged, in a two count indictment, with transporting a stolen vehicle in interstate commerce, in violation of 18 U.S.C. § 2312, and with selling or receiving a stolen vehicle moving in interstate commerce, in violation of 18 U.S.C. § 2313. The evidence adduced at his brief trial showed that a black, 1975 Ford Elite bearing the Tennessee license 3AH367 and belonging to Larry D. Hatmaker was stolen from Hatmaker's driveway in Lake City, Tennessee on the evening of April 7, 1976 or the early morning of April 8, 1976, and was driven to and parked in a residential driveway at 903½ Magnolia Drive, N.W. in Huntsville, Alabama during the morning of April 8, 1976. James Michael Hinsdale, who rented an apartment adjoining the driveway where the stolen car was parked, heard the car pull into the driveway and noticed Gipson walking away from the car at about 6:30 A.M. on April 8, 1976. Later that morning, in response to a tip from a reliable informant that there was a stolen car parked at 903½ Magnolia Drive, N.W., Officer Tielking of the Huntsville police department checked the car with the National Crime Intelligence Center and was informed that the car was indeed a stolen vehicle from Tennessee. On this information, police maintained surveillance of the car.

At about 10:00 A.M. on April 9, 1976, the police observed two men—later identified as Jimmy Jones and Jerry Reid—examine the car and start the engine. They did not drive the car. Later that day, at about 2:00 P.M., Gipson was seen walking around the car and taking something out of the stolen car's glove compartment. Reid testified that he and Jones inspected the car because Jones had told him that a friend was selling the car, and Reid was interested in buying it. Reid's testimony as to the identity of Jones's friend was equivocal, and Reid was unable, during the trial, positively to identify Gipson as the friend for whom Jones was selling the car. Nevertheless, Reid decided to buy the car, and gave Jones a check for $1500, payable to Jones, with the further understanding that Reid would give Jones his used Toyota as part of the purchase price. Jones, in return, gave Reid the keys to the car. When the sale fell through because of the identification of the 1975 black Ford Elite as a stolen car, Jones destroyed Reid's check. Gipson was arrested by FBI Agent Adolph Marx on April 21, 1976. During that arrest, Marx removed a set of keys from Gipson's clothing that was later found to fit the stolen car.

On this evidence, the jury acquitted Gipson of the transportation count (18 U.S.C. § 2312) but found him guilty of the selling or receiving count (18 U.S.C. § 2313). About an hour after the jury retired to deliberate, the jurors returned to the courtroom to request additional instructions from the court, handing the judge a note that read, "In Count Two, will he be guilty of all counts or will it be broken down?" The judge accurately perceived that this question could be interpreted in several different ways. He identified three distinct glosses that could be placed on the question and gave the jury instructions responsive to each of these interpretations. In response to his third interpretation of the jury's question, the judge charged the jury as follows:

> A third question that may be the one that the jury is really asking is, must there be an agreement by all twelve jurors as to

1. 18 U.S.C. § 2313 provides:

   Whoever receives, conceals, stores, barters, sells or disposes of any motor vehicle or aircraft moving as, or which is a part of, or which constitutes interstate or foreign commerce, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years or both.

which act of those several charged in Count Two, that the defendant did. For example, would it be possible for one juror to believe that the Defendant had stored property, and another juror to believe that he had received property, and so on. If all twelve agreed that he had done some one of those acts, but there was not agreement that he had done the same act, would that support a conviction? The answer is yes. If each of you is satisfied beyond any reasonable doubt that he did any one of those acts charged, and did it with the requisite state of mind, then there would be a unanimous verdict, and there could be a return of guilty under Count Two of the indictment, even though there may have been disagreement within the jury as to whether it was receiving or storing or what.

The defense objected in a timely manner to the propriety of this charge. Gipson contends that his right to a unanimous jury verdict was violated.

## II.

■■■ Rule 31(a) of the Federal Rules of Criminal Procedure requires that a jury verdict in a federal criminal trial be unanimous. That rule gives explicit recognition to a requirement that the Supreme Court has long assumed to inhere in a federal criminal defendant's sixth amendment right to a trial by jury.[2] See *Andres v. United States,* 1948, 333 U.S. 740, 748–49, 68 S.Ct. 880, 92 L.Ed. 1055, 1061; *Hawaii v. Manki-*

*chi,* 1903, 190 U.S. 197, 211–12 (dictum), 23 S.Ct. 787, 47 L.Ed. 1016, 1020; *Maxwell v. Dow,* 1900, 176 U.S. 581, 586 (dictum), 20 S.Ct. 448, 44 L.Ed. 597, 599; *Thompson v. Utah,* 1898, 170 U.S. 343, 355, 18 S.Ct. 620, 42 L.Ed. 1061, 1068. In its most recent pronouncement on the unanimous jury question—the companion cases of *Johnson v. Louisiana,* 1972, 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152, and *Apodaca v. Oregon,* 1972, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184—the Court *held* that the sixth amendment requires a unanimous verdict in a federal criminal trial despite the fact that the sixth amendment, which is applicable to the states through the fourteenth amendment under *Duncan v. Louisiana,* 1968, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491, does not impose a similar requirement on state criminal proceedings.[3] It is thus settled that a federal criminal defendant has a constitutionally based right to a unanimous jury verdict.[4]

Although a federal defendant's right to a unanimous jury verdict is clear, the scope of that right, unfortunately, is not. Neither the research of counsel in this case nor our own independent study has unearthed a precedent dealing with the question—or a problem analogous to the question—posed by this appeal. That question is: Where a single criminal statute prohibits a number of acts, and a finding by the jury that the defendant did any one of the prohibited acts is sufficient to convict him (provided, of course, that all other elements of the offense are found),[5] is the defendant's right

2. Article 3, § 2, cl. 3 of the Constitution also provides a trial by jury for federal defendants.

3. This result was the product of a curious split in the Court. The four Justices joining the Court's plurality opinion found that unanimity is not an indispensable ingredient of the sixth amendment jury-trial right. The four dissenting Justices, on the other hand, found that it is, making no distinction between federal and state trials on the theory that *Duncan* made the entire panoply of sixth amendment rights applicable to the states. The swing vote of Justice Powell joined the plurality to the extent he believed that unanimity is not required in state trials and the dissenters to the extent that he believed it is still a necessary element in federal trials. Justice Powell's split vote was due to

his rejection of the notion that *Duncan* incorporated all sixth amendment guarantees "jot for jot" into the fourteenth amendment's due process clause. He concluded that jury unanimity is not "in fact so fundamental to the essentials of jury trial that this particular requirement of the Sixth Amendment is necessarily binding on the States under the Due Process Clause of the Fourteenth Amendment." 406 U.S. at 373, 92 S.Ct. at 1639, 32 L.Ed.2d at 166.

4. This right may not be waived. *Hibdon v. United States,* 6 Cir. 1953, 204 F.2d 834.

5. This Court has previously held that "the commission of any one of the prohibited acts [enumerated in 18 U.S.C. § 2313] constitutes a

to a unanimous verdict infringed if a guilty verdict is returned when all members of the jury agree that the defendant performed one of the prohibited acts, but disagree as to which of the acts he performed? In other words, where a criminal statute provides a number of ways of satisfying the actus reus element of an offense, does a defendant's right to a unanimous jury verdict require all jurors to find that element present by reaching substantial agreement as to the facts that satisfy the element before they can return a verdict of guilty?

We emphasize at the outset that our examination of the propriety of the district court's instruction is not to be confused with an attempt to breach the shroud surrounding jury deliberation. Courts have long held that a jury verdict cannot be set aside on the grounds that it is inconsistent (*Dunn v. United States,* 1932, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356; *Odom v. United States,* 5 Cir. 1967, 377 F.2d 853, 857) or the product of a compromise (*United States v. Dotterweich,* 1943, 320 U.S. 277, 64 S.Ct. 134, 279, 88 L.Ed. 48, 50–51). But, absent competent evidence to the contrary,[6] a court has no reason to assume that an inconsistent or compromise verdict is not unanimous, and therefore has no justification for inquiring into the logic behind the jury's verdict. The situation here is different. Gipson's non-unanimity challenge is based not on the result reached by the jury, but on a court instruction that may have judicially sanctioned a non-unanimous ver-

dict. If this was the import of the challenged instruction, then it was infirm, both under Fed.R.Crim.P. 31(a) and the sixth amendment, and the instruction constitutes cause for the reversal of Gipson's conviction, unless it was harmless beyond a reasonable doubt. *Chapman v. California,* 1967, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705. We must therefore determine whether a verdict reached in accordance with the challenged instruction would violate a federal criminal defendant's right to a unanimous jury verdict.

A superficial analysis of the problem might yield the conclusion that since every juror was still required to find all elements of the charged offense present in order to convict the defendant, there was necessarily unanimous jury agreement as to his guilt. This reasoning loses its cogency, however, when the policy underlying the unanimous jury right is taken into account.

Like the "reasonable doubt" standard, which was found to be an indispensable element in all criminal trials in *In re Winship,* 1970, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368, the unanimous jury requirement "impresses on the trier of fact the necessity of reaching a subjective state of certitude on the facts in issue". 397 U.S. at 364, 90 S.Ct. at 1072, 25 L.Ed.2d at 375.[7] The unanimity rule thus requires jurors to be in substantial agreement as to just what a defendant did as a step preliminary to determining whether the defendant is

crime". *Weaver v. United States,* 5 Cir. 1967, 374 F.2d 878, 880.

**6.** A juror's testimony relating to the mental process by which he reached his verdict is not competent evidence for purposes of impeaching a jury's verdict. *Stimack v. State of Texas,* 5 Cir. 1977, 548 F.2d 588; *University Computing Co. v. Lykes-Youngstown Corp.,* 5 Cir. 1974, 504 F.2d 518, 547–48 n. 43. This evidentiary rule is largely the product of a desire to insure the finality of jury verdicts; for, as one noted commentator has observed, "[t]o permit litigants to go behind a general verdict (the favored form of verdict in a criminal case) in order to determine its ingredients would lead to countless allegations of error". 8 Moore's Federal Practice ¶ 31.08[1][a], at 31–55 – 31–56.

**7.** In *Johnson v. Louisiana,* 1972, 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 and *Apodaca v. Oregon,* 1972, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184, the Supreme Court held only that a unanimous jury was not *necessary* in order "to give substance to the reasonable-doubt standard". 406 U.S. at 359, 92 S.Ct. at 1623, 32 L.Ed.2d at 157. The Court did not disagree with the notion that the unanimous jury requirement *helps effectuate* the reasonable doubt standard. Indeed, in noting that "[o]f course the State's proof could be regarded as more certain if it had convinced all 12 jurors instead of only nine", 406 U.S. at 362, 92 S.Ct. at 1625, 32 L.Ed.2d at 159, the Court apparently accepted the complementary interplay of the reasonable doubt standard and the unanimous jury requirement as inherent.

guilty of the crime charged. Requiring the vote of twelve jurors to convict a defendant does little to insure that his right to a unanimous verdict is protected unless this prerequisite of jury consensus as to the defendant's course of action is also required.[8]

Under the district court's instructions, the jury was authorized to convict the defendant of violating 18 U.S.C. § 2313 if each individual juror found that the defendant performed one of the six prohibited acts—receiving, concealing, storing, bartering, selling, or disposing—on a stolen vehicle moving in interstate commerce that the defendant knew to be stolen. These six acts fall into two distinct conceptual groupings; the first consisting of receiving, concealing, and storing, and the second comprised of bartering, selling, and disposing. Within each grouping, the acts are sufficiently analogous to permit a jury finding of the actus reus element of the offense to be deemed "unanimous" despite differences among the jurors as to which of the intra-group acts the defendant committed. This is so for two reasons. First, the acts within each grouping are not conceptually distinct. The single act of keeping a vehicle in a certain place may constitute both concealing and storing; or the single act of marketing a vehicle may simultaneously constitute bartering, selling, and disposing. Second, distinguishing among the acts within each grouping presents characterization problems. One juror may view a defendant's actions in housing a stolen vehicle as receiving, while another juror may conclude that the same actions constitute concealing or storing. Similar definitional problems would likely confront a jury faced with the task of choosing among the terms bartering, selling, and disposing for the proper label for a defendant's actions.

On the other hand, the two conceptual groupings are sufficiently different so that a jury finding of the actus reus element of the offense would not be "unanimous" if some of the jurors thought the defendant committed only an act in the first conceptual grouping while others believed he committed an act only in the second. Differentiating the course of conduct prohibited by the first grouping from that proscribed by the second presents neither the conceptualization nor the characterization problems posed by distinguishing the acts within each grouping. The individual jurors and the collective jury could be expected to perceive and understand that the conduct prohibited by the first grouping, that relating to the housing of stolen vehicles, is distinct and different from the conduct forbidden by the second grouping, that dealing with the marketing of stolen vehicles.

■ The district court's challenged instruction authorized the jury to return a guilty verdict despite the fact that some jurors may have believed that Gipson engaged in conduct only characterizable as receiving, concealing, or storing while other jurors were convinced that he committed acts only constituting bartering, selling, or disposing. Thus, under the instruction, the jury was permitted to convict Gipson even though there may have been significant dis-

---

**8.** This point is best illustrated by example. A single criminal code section might prohibit a number of distinct acts; for example, a traffic control statute might prohibit (a) speeding, (b) driving without lights at night, (c) making a turn from the wrong lane, and (d) failing to use turn signals. At a trial for violating the statute, the prosecution might present some evidence that each of the prohibited acts was performed by the defendant, and the judge might charge the jury that the defendant would be guilty of violating the statute if the jury found he had done any one of the prohibited acts. If three members of the jury found that the defendant was guilty of speeding but had not committed any of the other prohibited acts, and three other jurors found that the only illegal act the defendant committed was driving without lights at night, and three other jury members found that the only prohibited act the defendant performed was making a turn from the wrong lane, and the final three jurors found that the only wrong the defendant committed was failing to use his turn signals, the defendant's right to a unanimous verdict would be violated if the jury found him guilty of violating the code section. The prosecution would not have convinced *all* of the jurors that the defendant committed one or more of the unlawful acts. Indeed, nine of the jurors would have found that the defendant did *not* perform each of the prohibited acts.

agreement among the jurors as to what he did. The instruction was therefore violative of Gipson's right to a unanimous jury verdict.

During argument, the government admitted, and the record shows that the prosecution presented evidence tending to show that Gipson performed each of the six acts prohibited by 18 U.S.C. § 2313. The possibility that the jury may have returned a guilty verdict in the face of a substantial rift among the jurors over the facts in the case is, therefore, a real one. Because it is impossible to determine whether all of the jurors agreed that the defendant committed acts falling within one of the two conceptual groupings, we cannot say that the district court's instruction was harmless beyond a reasonable doubt under *Chapman v. California*, 1967, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705. We must therefore reverse Gipson's conviction and remand for a new trial.

REVERSED.