The STATE of Ohio, Appellee,

v.

BELL, Appellant.

[Cite as *State v. Bell* (1996), 112 Ohio App.3d 473.]

Court of Appeals of Ohio,
Third District, Marion County.

No. 9–95–25.

Decided July 10, 1996.

*Jim Slagle,* Marion County Prosecuting Attorney, for appellee.

*Ronald J. Koltak* and *R. Dale Yurovich,* for appellant.

HADLEY, Presiding Judge.

This is an appeal by the defendant, John E. Bell ("appellant"), from a judgment of the Court of Common Pleas of Marion County denying his motions for a new trial and for postconviction relief from the judgment rendered against him on December 7, 1990, finding him guilty of rape in violation of R.C. 2907.02(A)(1)(b).

Appellant was convicted based upon his sexual conduct with a twelve-year-old girl ("Cara"). Appellant was the child's 4–H counselor and spent considerable

time with her during the summer of 1990, purportedly helping her with some husbandry projects. After several persons began noticing that certain behaviors were occurring between appellant and Cara, these incidents were reported to the legal authorities. Following an investigation, charges were filed against appellant, who was then indicted on two counts of felonious sexual penetration, in violation of R.C. 2907.12(A)(1)(b), and one count of rape,[1] in violation of R.C. 2907.02(A)(1)(b). Appellant was acquitted on the first two counts, but was found guilty on the third count. Following a sentencing hearing, appellant was sentenced to confinement in a penal institution for an indefinite term of ten to twenty-five years. The conviction and sentence were appealed to this court, and we affirmed the trial court's judgment. See *State v. Bell* (May 3, 1991), Marion App. No. 9–90–79, unreported, 1991 WL 71926.

Appellant subsequently filed a motion for leave of court to file a Crim.R. 33(B) motion for a new trial based upon newly discovered evidence. The parties then filed numerous documents, affidavits, and memoranda supporting their positions as to the granting of a motion for a new trial. On November 1, 1994, following a review of all the submitted documents, the trial court granted appellant's motion for leave to file a motion for a new trial, agreeing with him that there was some newly discovered evidence which had not been available to appellant before or during the trial.

As ordered, appellant filed his motion accompanied by a petition for postconviction relief from judgment. Following a comprehensive review of the record, the trial court denied appellant's motion for a new trial and dismissed his petition for postconviction relief. Appellant has appealed both of the trial court's decisions, asserting two assignments of error.

For the sake of analysis, we address the assignments of error in reverse order. In his second assignment of error, appellant states:

"The trial court erred in denying defendant's motion for new trial based upon newly discovered evidence because evidence which was newly discovered by the defendant created a strong probability of a different result in the event of a subsequent trial."

---

1. R.C. 2907.02(A)(1)(b) provides:

"No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when * * * [t]he other person is less than thirteen years of age, whether or not the offender knows the age of such person."

"Sexual conduct" is defined in R.C. 2907.01(A) as "vaginal intercourse between a male and female, and anal intercourse, fellatio, and cunnilingus between persons regardless of sex. Penetration, however slight, is sufficient to complete vaginal or anal intercourse."

Appellant claims that certain evidence was discovered during preparation for a civil action by the child victim and her parents against appellant and that this evidence was unavailable and undiscoverable at the time of his criminal trial. Appellant filed his motion for leave to file a motion for a new trial based upon this "newly discovered evidence." This motion was granted. However, upon review of multiple pleadings and documents submitted by appellant and the state, the trial court overruled the motion for a new trial. Appellant claims that was prejudicial error. We disagree.

In order to grant a Crim.R. 33 motion for a new trial, it must be shown that the newly discovered evidence upon which the motion is based:

"(1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence." *State v. Petro* (1947), 148 Ohio St. 505, 36 O.O. 165, 76 N.E.2d 370, syllabus.

The Supreme Court in *Petro* further noted that:

" 'The granting of a motion for a new trial upon the ground named [newly discovered evidence] is necessarily committed to the wise discretion of the court, and a court of error cannot reverse unless there has been a gross abuse of that discretion. And whether that discretion has been abused must be disclosed from the entire record.' " *Id.* at 507–508, 36 O.O. at 166, 76 N.E.2d at 372, quoting *State v. Lopa* (1917), 96 Ohio St. 410, 411, 117 N.E. 319, 320.

Following a review of the record, we conclude that the trial court did not abuse its discretion. The court first determined that appellant had satisfied prongs two and three of the *Petro* test, that the evidence had been discovered since the trial, and that some of it could not have been previously discovered. However, the evidence introduced must also be found to be material to the appellant's defense and not merely cumulative or in the nature of impeachment testimony. In addition, there must be a probability that the appellant would be acquitted *if* a new trial is had.

Appellant first asserts that the victim in this case made posttrial statements that the complained-of rape did not actually occur. A review of the child's deposition testimony submitted by appellant reveals that the testimony is not inconsistent with her trial testimony. Naturally, upon later questioning (nearly three years after the trial), the young child did not remember everything that had happened. Further, in response to the motion for new trial, she signed an affidavit in which she attested that she had been sexually abused by appellant, and that her trial testimony was true. Thus, we find that there is no new

material evidence in the testimony of the child victim which would likely change the result of the trial.

■ Appellant also claims that one of the state's witnesses, Anna Stinemetz, recanted her trial testimony. However, the review reveals that her statements are consistent with and do not actually contradict her trial testimony. Further, as noted by the trial court, there is sufficient evidence in the record from other witnesses, absent the testimony of Stinemetz, upon which the jurors could have relied in rendering their verdict of guilty to count three of the indictment.

Appellant next offers as evidence the belatedly obtained records of the victim's counseling sessions at a treatment facility. He claims that the records should be submitted as evidence of the child's propensity for falsehood. Appellant had previously introduced at trial the testimony of witnesses that the child had a reputation for lying. Thus, this new evidence would merely be cumulative as to the child's veracity. Additionally, the trial court found that appellant had not demonstrated that the same information was unavailable to appellant at the time of trial.

Finally, appellant relies on the affidavits of several now-teenaged boys regarding occurrences of sexual intercourse with the victim in this case prior to the time that she had intercourse with appellant. Such evidence would only be relevant to impeach the victim's testimony that she had not had relations with anyone else. Therefore, as mere impeachment evidence, these affidavits are not sufficient evidence for a new trial. Moreover, such testimony regarding a victim's prior sexual history would likely not be admissible under R.C. 2907.02(D), which prohibits most testimony regarding such matters.

We thus find that none of the proposed new evidence is sufficient to satisfy the requirements of *Petro* for the granting of a new trial. Accordingly, the trial court did not abuse its discretion in denying the new trial based upon such materials. The second assignment of error is overruled.

For his first assignment of error, appellant states:

"The trial court erred in denying the motion for post-conviction relief.

"(A) The state had joined two allegations of rape into one count of the indictment in violation of Defendant's right to due process.

"(B) The argument could not have been made on direct appeal.

"(C) Defendant was denied the effective assistance of counsel both at the trial and the appellate level."

■ On a motion for postconviction relief from judgment, the trial court is required by R.C. 2953.21 to review and address the petitioner's claim that his conviction is void or voidable under the Constitution. If the petition is dismissed,

the trial court must "make and file findings of fact and conclusions of law with respect to such · dismissal." R.C. 2953.21(C). In this case, the trial court dismissed appellant's petition on the basis that his "argument could have been made on direct appeal and must be overruled." However, it is clear that the denial of due process claimed by appellant has never been raised, either in the trial court or in the appellate court. The same attorney represented appellant at both levels. We, therefore, find that a dismissal on the grounds of *res judicata* is improper in that it cannot realistically be expected that counsel would argue his own incompetence at the trial level or on appeal. However, for the following reasons, we do not find such a ruling has in any way prejudiced appellant.

Appellant states that "[o]nly one offense may be charged per count in an indictment. * * * Similarly, *only one offense may be proven per count in an indictment*." Appellant thus claims that the state violated his right to due process by joining two counts of rape into one count of the indictment, an action often referred to as "duplicity." Appellant further states that since the state made that improper joinder, it is impossible to determine if the jury unanimously convicted appellant of the alleged penile/vaginal act or of the alleged oral sexual conduct or of some combination of each.

Appellant certainly has a right to due process by being informed of the specific charges against him so that he may formulate a proper defense. The third count of the indictment against appellant provided as follows:

"COUNT III—Rape

"(ORC § 2907.02(A)(1)(b), Agg. F1

"JOHN E. BELL, at Marion County, Ohio, on or about July 24 through on or about July 31, 1990, inclusive, did, engage in sexual conduct with K.B. [*sic* ], not his spouse, the said K.B. being less than thirteen (13) years of age, an aggravated felony of the first degree."

Prior to his trial, appellant requested a bill of particulars from the state and later made requests that the bill be made more specific, in that he was unable to formulate a proper defense without more specificity as to the facts supporting the charges in the indictment. The most specific bill of particulars appellant received from the state provided as follows:

"COUNT 3 (Rape): At an unknown time on the same day as in COUNT 2, during the period of time from July 24, 1990 to July 29, 1990 at the Fred Issler Farm on S.R. 47, 4010 Prospect–Richwood Road, Marion County, Ohio, John Bell made flesh to flesh contact with Cara * * * in a barn, in either a feed room, the milk house or a haymow, by fondling her breasts and vaginal areas, by inserting one or more of his fingers into her vaginal cavity, by inserting his penis into her vaginal cavity and by putting his penis into her mouth. * * * As to Count 3, the

exact location depends on the witness. One of the State's witnesses says she saw John Bell and Cara * * * having sex in three locations—the haymow, the milk house and the feed room. Anna Stinemetz saw Cara * * * naked in the feed room. Cara * * * has said that it happened in the feed room, but also, that she was laying [sic] next to cows. I suspect that more than one incident has happened in the barn, but Cara * * *, an understandably embarrassed 12 year old girl, has yet to admit to more than one incident in the barn. Under these circumstances, I cannot be more specific with the location of the sexual molestation alleged in Count 3.

"More specific dates and times are not possible. * * * Counts Two and Three specify a period from July 24, 1990 to July 29, 1990. Anna Stinemetz says the rapes occurred on July 29, 1990. Cara * * * says they happened between July 24 and July 29, 1990. Defendant has no possible alibi defense. He was hired by Tom and Susan Issler to milk dairy cows at Fred Issler's Farm from July 24, 1990 through July 30, 1990."

Crim.R. 7(E) provides that upon request the prosecution shall provide the defendant with a bill of particulars which sets forth the specific nature of the offense charged and the defendant's conduct alleged to constitute the offense. The bill of particulars herein was somewhat limited due to the tender age of the victim; however, the description contained therein more than describes the nature of the offense charged and the conduct alleged to constitute the offense as required by Crim.R. 7(E).

Furthermore, a bill of particulars is in no way designed to provide an accused with evidence specifications or to act as a discovery substitute. *State v. Lawrinson* (1990), 49 Ohio St.3d 238, 239, 551 N.E.2d 1261, 1262. What additional defense would appellant be able to set forth if it was specified in which room in the barn each of the acts occurred? Appellant was in no way surprised, misled, or prevented from preparing for trial. The state explained that there was no additional information available and the absence of additional specifics regarding the precise location of the sexual acts is immaterial to the conduct charged and was unnecessary to any theory of defense alleged by appellant. *Id.* at 238–239, 551 N.E.2d at 1262.

Appellant states that, after receiving an indictment with just one charge, the prosecution produced evidence attempting to prove that appellant had engaged in conduct which would constitute two separate offenses of rape. The dissent thus finds that the prosecution "interjected an element of duplicity into this case." In the past, duplicity has usually been raised after an indictment charges in one count the commission of an offense which may be committed in two or more ways. See *State v. Daniels* (1959), 169 Ohio St. 87, 8 O.O.2d 56, 157

N.E.2d 736, paragraph thirteen of the syllabus. A motion to dismiss the indictment is the usual avenue of attack. Indictments are usually not dismissed, however, if there is no repugnancy in the ways the offense is charged. In *Hale v. State* (1898), 58 Ohio St. 676, 51 N.E. 154, paragraph one of the syllabus, the Supreme Court stated:

"When an offence against a criminal statute may, in the same transaction, be committed in one or more of several ways as therein provided, the indictment may, in a single count, charge its commission in any or all of the ways specified, if they are not repugnant."

There was no duplicity in the indictment herein as evidenced initially by its reading. Further, appellant did not file a motion to dismiss the same for that reason. Rather, he entered a plea of not guilty and proceeded to trial, thereby waiving any defect regarding the indictment.

As pointed out above, appellant was fully advised of the charge by the bill of particulars. No case law is noted that provides that an explanation of the charge in the bill of particulars can amount to duplicity. Nor did the trial court introduce duplicity into the case by not fulfilling its duty to instruct the jury on its responsibility to reach a unanimous agreement on the course of conduct which it used to find appellant guilty of rape.

Appellant states that we can have no confidence that all twelve members of the jury voted to convict appellant for the same conduct. The words of the actual indictment and the charge are all the jury has in any case to apply to the evidence submitted. It is never certain what portion of the evidence in any case actually convinces a jury of the guilt of an accused. If the indictment adequately states the charge, the bill of particulars sets forth the nature of the offense and the alleged conduct, the evidence is properly admitted, the charge to the jury adequately supplies the law to be applied to the evidence, and the accused is properly represented, he has received a fair trial. He is not guaranteed a perfect trial, only a fair one.

In *United States v. Duncan* (C.A.6, 1988), 850 F.2d 1104, 1110–1111, the court, citing *United States v. Gipson* (C.A.5, 1977), 553 F.2d 453, found that the jury should have been instructed that they had to unanimously agree on the same *actus rea*. The *Gipson* case points out that the Federal Rules of Criminal Procedure mandate that "a jury verdict in a federal criminal trial be unanimous." *United States v. Gipson*, 553 F.2d at 456. Interestingly, it adds, citing a concurring opinion in *Johnson v. Louisiana* (1972), 406 U.S. 356, 373, 92 S.Ct. 1620, 1639, 32 L.Ed.2d 152, 166, that "jury unanimity is not ' * * * so fundamental to the essentials of [a] jury trial that this particular requirement of the Sixth

Amendment is necessarily binding on the States under the Due Process Clause of the Fourteenth Amendment.'" *Gipson* at 456, fn. 3.

The *Gipson* case involved a federal statute which prohibited six different acts: "receiving, concealing, storing, bartering, selling, or disposing * * * [of] a stolen vehicle moving in interstate commerce that the defendant knew to be stolen." *Id.* at 458. The court found that there were two distinct conceptual groupings and that the acts within the groupings were not characteristically distinct. *Id.* In the case *sub judice,* the courses of conduct which amount to a violation of the offense charged do not involve the conceptualization or characterization problems presented in the *Gipson* case. The jurors could be expected to perceive and understand the conduct prohibited and reach an agreement as they did. In addition, the jury in *Duncan,* during deliberations, sent the court a note indicating confusion about the charge. *Id.,* 850 F.2d at 1109. No such confusion was evident in the instant case.

In the more recent case of *Schad v. Arizona* (1991), 501 U.S. 624, 111 S.Ct. 2491, 115 L.Ed.2d 555, the accused was convicted of first-degree murder without the prosecution or jury instructions specifying whether the case should be treated as premeditated murder or felony-murder, which were alternative theories advanced by the prosecution under the charge. In an opinion delivered by Justice Souter, the court pointed out:

"We have never suggested that in returning general verdicts in such cases the jurors should be required to agree upon a single means of commission, any more than the indictments were required to specify one alone. In these cases, as in litigation generally, 'different jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line. Plainly there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict.'" *Id.* at 631–632, 111 S.Ct. at 2497, 115 L.Ed.2d at 565.

The court further stated:

"That is not to say, however, that the Due Process Clause places no limits on a State's capacity to define different courses of conduct, or states of mind, as merely alternative means of committing a single offense, thereby permitting a defendant's conviction without jury agreement as to which course or state actually occurred. The axiomatic requirement of due process that a statute may not forbid conduct in terms so vague that people of common intelligence would be relegated to differing guesses about its meaning, * * * carries the practical consequence that a defendant charged under a valid statute will be in a position to understand with some specificity the legal basis of the charge against him. Thus it is an assumption of our system of criminal justice 'so rooted in the traditions and conscience of our people as to be ranked as fundamental,' * * *

that no person may be punished criminally save upon proof of some specific illegal conduct." *Id.* at 632–633, 111 S.Ct. at 2497, 115 L.Ed.2d at 566.

In *Schad,* the court found that the *Gipson* approach was inadequate to cover all types of cases and that there really could be no concrete guidelines to determine whether due process has been afforded regarding specificity of charges and unanimity by juries. *Id.* at 635–638, 111 S.Ct. at 2498–2500, 115 L.Ed.2d at 567–569. Rather, the court found that the issue is really one of fundamental fairness and rationality, which are examined by looking at "history and wide practice as guides to fundamental values." *Id.* at 637, 111 S.Ct. at 2500, 115 L.Ed.2d at 569. The court also pointed out that "the moral and practical equivalence of the different mental states that may satisfy the *mens rea* element of a single offense" must also be contemplated and that the whole matter must be considered "with a threshold presumption of legislative competence to determine the appropriate relationship between means and ends in defining the elements of a crime." *Id.* at 637–638, 111 S.Ct. at 2500, 115 L.Ed.2d at 569.

In considering the charge in the case *sub judice* and utilizing the guidelines as set forth above, we note that the charge of rape in Ohio has a long history and widespread usage both at common law and under the statute and it is highly unlikely that a defendant would be able to demonstrate that he could not determine any of the inherent elements of the offense. In addition, the alternatives involved in the offense reasonably reflect notions of equivalent blameworthiness or culpability which would rule out any argument that there is a moral disparity in treating the alternative means in a single offense.

█ Since all twelve of the jurors signed the guilty verdict, each believed that at least one of the acts of sexual conduct occurred, any one of which would constitute rape. The jury was charged that in order to convict appellant of rape as charged in the indictment, it was to find that on or about July 24 through 31, 1990, in Marion County, Ohio, the defendant did engage in sexual conduct with the victim who was not his spouse and who was less than thirteen years of age. The jury was also told that "sexual conduct" includes vaginal intercourse between a male and female, and fellatio between persons regardless of sex, and that "from the evidence" they were to "determine what the facts are" which satisfied the commission of the offense with which appellant was charged. The court did not instruct as the trial court did in the *Gipson* case that if the jury found that the defendant committed one of the several acts charged that it could reach a verdict of guilty as there was only one single violation charged.

The jury did exactly as instructed, indicating no confusion and finding unanimously that evidence was introduced which satisfied each of the elements outlined by the court regarding appellant's conduct on the date in question. There are no

interrogatories or other means to precisely determine which facts the jury felt satisfied those elements.

Appellant implies that any time there is evidence of more than one incident, the state should be required to file separate charges on each incident, but cites no authority for such a novel approach. It is interesting to note that prosecutors are often accused by defense counsel of overcharging in their indictments but are seldom, if ever, accused of undercharging.

■ A prosecutor's decision as to a charge is within his or her discretion, limited only by the legislative intent and pleading rules. Crim.R. 7(B), discussing the contents of an indictment, provides that "[i]t may be alleged in a single count that the means by which the defendant committed the offense are unknown" or that the offense was committed "by one or more specified means." There is no duplicity here and no due process violation.

■ Finally, appellant claims that he was denied the effective assistance of counsel both at the trial level and the appellate level where he was represented by the same attorney. The test for determining effectiveness of counsel is whether counsel's conduct so frustrated the proper functioning of the adversary process that there can be no reliance that the trial produced a just result. In addition, appellant's prejudice must be such that but for counsel's errors there is a reasonable probability that the result of the trial would have been different. See *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. The conduct alleged by appellant to have been ineffective revolves around the failure of counsel to properly pursue appellant's due process objections, including the "multiple unspecified allegations of sexual conduct" raised by the prosecution, and to further challenge the victim's veracity on cross-examination, by way of the victim's treatment records at Mills Center and the victim's prior false accusations of abuse.

As pointed out in the discussion above, these are not items that would be sufficient to afford appellant a new trial or to show a violation of due process and would not otherwise comply with the test of *Strickland* in providing a reasonable probability of a different outcome in the proceedings.

Appellant's first assignment of error is thus overruled and the judgment of the trial court is affirmed.

*Judgment affirmed.*

SHAW, J., concurs.

EVANS, J., dissents.

EVANS, Judge, dissenting.

I respectfully dissent because I find duplicity in this case which prejudiced the appellant. In addition, I believe that the duplicity raised a need for additional jury instructions to ensure a unanimous jury verdict against this appellant. Since the jury instructions were not given, the appellant did not have a fair trial.

The indictment in this case charged the appellant with one count of rape, but when the prosecuting attorney presented his case to the jury he produced testimony by which he attempted to prove that appellant had engaged in conduct which would constitute two separate crimes of rape. In so doing, the prosecuting attorney interjected an element of duplicity into this case, and also violated the Rules of Criminal Procedure.

Pursuant to Crim.R. 8(A), joinder of offenses, the prosecuting attorney was obligated to indict the appellant on two counts of rape if he intended to present evidence of two separate acts on the part of the appellant which would constitute the crime of rape. The rule states:

"Two or more offenses may be charged in the same indictment, information or complaint *in a separate count for each offense * * *.*" (Emphasis added.)

There can be no doubt of the approach used by the prosecuting attorney in this case in view of the following remarks he made to the jury during closing argument:

"Count III is rape and you had testimony of two incidents of that. One came from Cara * * * as to vaginal intercourse between the stanchions in the dairy barn and one as to Megan Issler with the Defendant sticking his penis into the mouth of Cara * * * up in the hay mow."

Duplicity has been defined as the joining in a single count of two or more distinct and separate offenses. See 41 American Jurisprudence 2d (1995) 815, Indictments and Informations, Section 213. In *United States v. McGuinness* (S.D.N.Y.1991), 764 F.Supp. 888, 892, the court, quoting *United States v. Murray* (C.A.2, 1980), 618 F.2d 892, 896, explained the dangers inherent in duplicitous charges:

" 'Important policy considerations underlie the rule that two or more distinct crimes should not be alleged in a single count of an indictment. If an indictment is duplicitous, a general verdict of guilty will not reveal whether the jury found defendant guilty of only one crime and not the other, or guilty of both. * * * Moreover, a guilty verdict on a duplicitous indictment does not indicate whether the jury found defendant guilty without having reached [a] unanimous verdict on the commission of a particular offense. Thus, the prohibition of duplicity is said to implicate a defendant's rights to notice of the charge against him, to a unanimous verdict, to appropriate sentencing and to protection against double jeopardy in subsequent prosecution.' "

In this case the duplicity is not apparent upon reading the indictment. It is only after an examination of the record that it becomes apparent that two crimes were presented to the jury under Count III of the indictment. I stress that the duplicity found in this case is not the "duplicity" referred to by the majority of charging in one count an offense which may be committed in two or more ways. Rather, duplicity was introduced into this case by the prosecutor during trial, which effectively resulted in the charging of two separate and distinct crimes in one count of the indictment.

The majority relies on the case of *Schad v. Arizona* (1991), 501 U.S. 624, 111 S.Ct. 2491, 115 L.Ed.2d 555. However, that case involved a count of first degree murder, wherein the prosecution advanced the theory that the murder was either premeditated murder or felony-murder. Thus, the prosecution was urging two different theories, either of which would constitute a commission of the same crime, of one murder only. The ultimate fact in *Schad* is that the victim was killed. How the killing was accomplished is not so important if the jury unanimously agreed that the victim had been killed, as they must in order to return a unanimous verdict. So long as the penalty remains the same under either theory the method of killing is relatively unimportant.

In this case, on the other hand, it is possible to commit the crime of rape more than once, as distinguished from a killing. This appellant was not charged with one rape which he committed in one of two alternative ways, but with *two separate crimes of rape* in the same count of the indictment.

Accordingly, I conclude that the jury charge in this case was deficient due to the introduction of the element of duplicity into the case. In *United States v. Duncan* (C.A.6, 1988), 850 F.2d 1104, 1110, the court explained, in language clearly applicable to the circumstances in this case, the problem created in a duplicitous case wherein the jury instruction failed to elicit a clearly unanimous verdict:

"The general problem raised by these events is the danger of a 'patchwork' verdict in violation of the Sixth Amendment principle that a jury verdict must be unanimous.

"In *United States v. Gipson* (5th Cir.1977), 553 F.2d 453, the Fifth Circuit held that a federal jury must agree on at least one of multiple alternative 'conceptually' distinct acts that would constitute the *actus reus* of the crime. The *Gipson* court also laid down a broad dictum that the jury must 'be in substantial agreement as to just what a defendant did.' *Id.* at 457.

"Thus, in common law terms, the jury must agree that a defendant did an *actus reus* with a *mens rea*. The question is, when the State alleges alternative acts or intents, each of which would satisfy the *actus reus* or *mens rea* required, must

the jury agree on the same *actus reus* or *mens rea?* * * * To decide whether these jurors should have been instructed that they must all agree that a particular statement was willfully false, we must examine two issues: (1) Must the jury's verdict actually have been unanimous as to one or the other statement? and (2) If specific unanimity was required, must the jury actually have been told of this requirement? We believe that both of these questions must be answered affirmatively—the first because the two alleged false statements themselves constitute the essential culpable acts proscribed by statute and each false statement was a discrete fact requiring separate proof, and the second because the trial judge was required to disclose this augmented unanimity requirement to the jurors as a matter of law when they sought specific information about their need to agree on one or more of the statements."

In this case the answer to those questions is also clearly, "Yes." If the appellant's right to a unanimous verdict is to be preserved, the trial court had a duty to instruct the jury on its responsibility to reach unanimous agreement on the course of conduct which they used to find the appellant guilty of rape. See *McGuinness*, 764 F.Supp. at 892 (infringement on defendant's rights due to duplicity could be avoided by tailoring jury instructions and providing special verdict forms). The trial court failed to give the necessary instruction and thereby denied appellant a fair trial.

For these reasons, I believe that the ruling of the trial court dismissing the petition for postconviction relief was prejudicial to the appellant. I would reverse the ruling of the trial court and remand this cause to the trial court with instructions to grant appellant a new trial.