**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 25, 2011

No. 09-41206

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff – Appellee

v.

RICHARD JAMES TUCKER,

Defendant – Appellant

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:05-CV-17

Before JONES, Chief Judge, and BARKSDALE and GRAVES, Circuit Judges.

PER CURIAM:[*]

In 2002, Richard James Tucker was convicted, following a jury trial, of one count of securities fraud, 15 U.S.C. §§ 77q(a), 77x, and one count of mail fraud, 18 U.S.C. § 1341. The district court judge sentenced Tucker to a total of 120 months of imprisonment, three years of supervised release, and $15,219,965.37 in restitution. On direct appeal, Tucker claimed that the district court erred by failing to provide a specific unanimity-of-theory instruction to the jury. *United*

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-41206

*States v. Tucker*, 345 F.3d 320, 324 (5th Cir. 2003). This court, however, affirmed Tucker's conviction and sentence. *Id.* at 338.

Subsequently, Tucker sought relief under 28 U.S.C. § 2255. Without holding an evidentiary hearing, the magistrate judge recommended that Tucker's motion for relief be denied. The district court adopted the magistrate judge's recommendation and denied Tucker's motion for habeas relief and request for a certificate of appealability ("COA"). This court vacated the district court's decision and directed it to conduct an evidentiary hearing regarding Tucker's claims of ineffective assistance of trial and appellate counsel. Following the evidentiary hearing, the district court reached the same conclusion. Tucker now appeals the district court's decision. Because we find that Tucker's trial and appellate counsel were not ineffective, we affirm the district court's judgment.

## FACTS AND PROCEEDINGS

First Fidelity Acceptance Corporation ("FFAC"), a Nevada Corporation, headquartered in Plano, Texas, was founded in 1991 for the purpose of purchasing and selling automobile loans in the form of installment sales contracts. After purchasing the loans, FFAC would "package" the loans and sell them to financial institutions and large investors.

In April 1992, Tucker joined FFAC as a consultant to assist FFAC in its first private placement of asset-backed securities. Shortly thereafter, the FFAC Board of Directors named Tucker Chief Executive Officer and Chairman of the Board. According to Tucker, from 1992-1996, FFAC's assets totaled $11,672,000.00. The Government, however, contends that FFAC was experiencing a financial crisis during this time.

In 1996, FFAC created Automobile Receivables Corporation ("FFAC-ARC") for the purpose of establishing three investment trusts. FFAC-ARC established these trusts with the goal of raising money for FFAC to borrow to make investments in automobile loans. To generate capital, the trusts facilitated the

2

No. 09-41206

offer and sale of certificates, with a minimum investment of $25,000.00. In order to entice potential investors to purchase the trust certificates, Tucker drafted a Private Placement Memorandum ("PPM") for each trust which included a description of the investment, the trust, and the trust's relationship to FFAC. The PPM also contained information regarding how FFAC would handle and use the money invested in the trusts.

In April 1998, FFAC's Chief Financial Officer reported to FFAC's Board of Directors that the corporation was insolvent. Thereafter, the Board forced Tucker to resign and brought in a team to review the corporation's financial records. After a review of FFAC's records, it was determined that FFAC was bankrupt. This team also examined the financial records of the three trusts. It was determined that the three trusts held very few assets of value.

On November 14, 2001, Tucker was indicted on two counts, charging him with one count of securities fraud, 15 U.S.C. §§ 77q(a) and 77x, and one count of mail fraud, 18 U.S.C. §1341. Count one alleged that from January 1996 through March 1998, in the Eastern District of Texas and elsewhere, Tucker offered and sold "securities by use of means or instruments or transportation or communication in interstate commerce or by use of the mails" and

(a) employed a device, scheme and artifice to defraud;

(b) obtained money by means of untrue statements of a material fact and omitted statements of a material fact necessary in order to make the statements made not misleading, in the light of the circumstances under which the statements were made; and,

(c) engaged in a transaction, practice, and course of business that operated as a fraud and deceit upon the purchasers.

The Government alleged that Tucker's "scheme and artifice to defraud" was evinced by the various statements contained in the three PPMs. Specifically, count one of the indictment averred that Tucker failed to disclose

to investors that (1) their investments would be deposited directly into FFAC's operating accounts, rather than the trusts as promised in the PPMs; (2) the proceeds would be used to pay FFAC's operating costs; (3) previously invested funds were not used as promised; and (4) the interest paid to some investors came out of the proceeds from the sale of certificates of another trust. The Government also stated that Tucker used the United States mail, interstate telephone services, and commercial interstate couriers to deliver the fraudulent PPMs. In addition, the Government listed thirteen individuals that allegedly had been duped by Tucker, along with the dates and amounts of their investments.

Count two of the indictment charged Tucker with mail fraud under 18 U.S.C. §1341. Specifically, count two reiterated the allegations of count one, but added that Tucker "knowingly and willfully" caused the investors "to place into the United States mails, envelopes addressed to FFAC in Plano, Texas, such envelopes containing checks and money orders as directed by TUCKER . . . , for delivery . . . to FFAC's headquarters in Plano, Texas . . . ." Count two also listed the same thirteen investors that were listed in count one.

Following a jury trial, Tucker was convicted on both counts. On July 19, 2002, the district court sentenced Tucker to a total of 120 months imprisonment,[1] three years of supervised release and ordered Tucker to pay $15,219,965.37 in restitution.

On appeal, Tucker argued, *inter alia*, that the district court failed to include a specific unanimity-of-theory instruction in the jury instructions. We found that Tucker could not demonstrate, under plain error review, that the district court's failure to instruct the jury on a specific unanimity-of-theory amounted to clear error. *Tucker*, 345 F.3d at 338. Therefore, we affirmed. *Id.*

---

[1] The district court sentenced Tucker to 60 months on each count and ordered the sentences to run consecutively.

No. 09-41206

On January 14, 2005, Tucker sought relief under 28 U.S.C. § 2255, presenting *inter alia* multiple claims of ineffective assistance of trial and appellate counsel. Without conducting an evidentiary hearing, the magistrate judge recommended that Tucker's § 2255 motion be denied and that a COA be denied.[2] Following a de novo review, the district court adopted the magistrate judge's report, denied Tucker's § 2255 motion, and denied a COA. Tucker appealed.

On April 28, 2008, our court vacated the district court's judgment, granted Tucker's COA application in part and remanded to the district court for an evidentiary hearing to determine whether trial and appellate counsel rendered ineffective assistance of counsel. On remand, the magistrate judge conducted an evidentiary hearing and recommended that Tucker's § 2255 motion be denied. After Tucker filed his objections to the report, the magistrate judge issued a supplemental report and recommendation, recommending that Tucker's motion for summary judgment and claim of ineffective assistance of appellate counsel be denied. Tucker again filed objections to the magistrate judge's report and recommendation. Following a de novo review, the district court overruled Tucker's objections, adopted the magistrate judge's report, denied Tucker habeas relief and denied a COA. Tucker timely appealed.

This court granted Tucker a COA on only two issues. Specifically, this court granted a COA regarding Tucker's claims that (1) his trial counsel was ineffective in failing to request a specific unanimity-of-theory jury instruction and (2) his appellate counsel was ineffective for failing to adequately brief the issue of whether the district court's failure to instruct the jury on a specific unanimity-of-theory satisfied the requirements of plain error.

---

[2] Pursuant to a Standing Order, certain civil suits are referred at the time of the filing equally among magistrate judges. *See* 28 U.S.C. §§ 626(b)(1) and (3).

No. 09-41206

## STANDARD OF REVIEW

On requests for § 2255 relief, we review the district court's findings of fact for clear error and issues of law de novo. *Woodfox v. Cain*, 609 F.3d 774, 788-789 (5th Cir. 2010). The clear error standard applies equally to findings by the district court as it does to proposed findings by a magistrate judge adopted by the district judge. *United States v. Cates*, 952 F. 2d 149, 153 (5th Cir. 1992). "'An ineffective assistance of counsel claim presents a mixed question of law and fact.'" *Richards v. Quarterman*, 566 F.3d 553, 561 (5th Cir. 2009) (quoting *Ward v. Dretke*, 420 F.3d 479, 486 (5th Cir. 2005)). "When examining mixed questions of law and fact, [we] employ[] 'a de novo standard by independently applying the law to the facts found by the district court, as long as the district court's factual determinations are not clearly erroneous.'" *Richards*, 566 F.3d at 561 (quoting *Ramirez v. Dretke*, 396 F.3d 646, 649 (5th Cir. 2005)). "A finding is clearly erroneous only if it is implausible in the light of the record considered as a whole." *Rivera v. Quarterman*, 505 F.3d 349, 361 (5th Cir. 2007) (citation and internal quotation marks omitted).

## DISCUSSION

Tucker challenges the district court's determination that his trial counsel was not ineffective when he failed to specifically request a unanimity-of-theory jury instruction. Tucker further challenges the district court's determination that his appellate counsel was not ineffective for failing to adequately brief the issue of whether the district court's failure to charge the jury with a specific unanimity-of-theory instruction satisfied the requirements of plain error.

*I. Ineffective Assistance of Trial Counsel*

The Sixth Amendment to the United States Constitution guarantees a defendant in a criminal prosecution the right to effective assistance of counsel. U.S. Const. amend. VI. In order to make a showing that the defendant was denied effective assistance of counsel, the defendant must meet the two-prong

test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under the *Strickland* test, the defendant must show that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *Id.* In making its determination, a court must take steps to "eliminate the distorting effects of hindsight" and "evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Under *Strickland*, this court can look at either prong first; "if either one is found dispositive, it is not necessary to address the other." *United States v. Webster*, 392 F.3d 787, 794 n.12 (5th Cir. 2004) (quoting *Buxton v. Lynaugh*, 879 F.2d 140, 142 (5th Cir. 1989)).

The first prong of *Strickland* requires that counsel's performance fall below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. For counsel's performance to be objectively unreasonable, counsel's errors must be so serious that he is not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id.* at 690. It is not the province of this court, however, to second guess an attorney's strategic decisions; rather, we "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Id.* at 689. With regard to the prejudice prong, the court must determine whether the "errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. Put simply, to establish the prejudice prong there must be a reasonable probability that, but for counsel's errors, the jury would have reached a different conclusion. *Id.* at 694.

On direct appeal, Tucker argued for the first time that the district court erred by failing to include a specific unanimity-of-theory jury instruction. *Tucker*, 345 F.3d at 336. Tucker claimed that each count of the indictment listed thirty mailings, and that each listing could support a separate act of securities fraud or mail fraud. Thus, Tucker argued that his counsel's failure to request a specific unanimity-of-theory instruction was objectively unreasonable, and that

the jury's guilty verdict might not have been unanimous as to which mailing Tucker caused – *i.e.*, prejudicially ineffective. *Id.*  Because Tucker raised this issue for the first time on appeal, our court reviewed for plain error. *Id.* at 333; *see also* Fed. R. Crim. P. 52(b).  Based on Fifth Circuit precedent this court concluded that the district court did not commit plain error by omitting a unanimity-of-theory instruction. *Id.* at 336-37.

This court's precedent supporting its decision on direct appeal is relevant to Tucker's present § 2255 appeal.  This court primarily relied upon *United States v. Gipson*, 553 F.2d 453 (5th Cir. 1977) and *United States v. Holley*, 942 F.2d 916 (5th Cir. 1991).  While *Gipson* established that a defendant not only has a right to a unanimous verdict, but also has the right to unanimity in the theory of which actions constituted the crime charged, Tucker's reliance on *Gipson* is misplaced. *Gipson*, 553 F.2d at 457.  *Gipson* differed from the present case because the trial judge improperly instructed the jurors that they could convict Gipson as long as each of them found that Gipson had committed one of the six enumerated actions prohibited by the statute. *Id.* at 458.  Furthermore, *Gipson* explained that in cases where the trial judge does not misinstruct the jury, "absent competent evidence to the contrary, a court has no reason to assume that an inconsistent or compromise verdict is not unanimous, and therefore has no justification for inquiring into the logic behind the jury's verdict." *Id.* at 457 (internal citation omitted).  This presumption was repeated in *Holley*.

Like *Gipson*, *Holley* found that "a general unanimity instruction will ensure that the jury is unanimous on the factual basis for a conviction, even where the indictment alleges numerous factual bases for criminal liability." *Holley*, 942 F.2d at 925-26 (citation and internal quotation marks omitted).  This rule fails only where "there exists a genuine risk that the jury is confused or that a conviction may occur as the result of different jurors concluding that a

defendant committed different acts." *Id.* at 926 (citation and internal quotation marks omitted).  In *Holley*, before the instructions were submitted to the jury, Holley objected to the instructions because they did not require all of the jurors to agree "in the knowing falsity of at least one particular statement." *Id.* at 929. The *Holley* court agreed finding the indictment to be duplicitous, and concluded that there was a "reasonable possibility that the jury was not unanimous with respect to at least one statement in each count." *Id.*  Therefore, this court ordered a new trial. *Id.*

Both *Gipson* and *Holley* provide an outline for a defendant's right to a unanimous verdict, and indicate that a unanimity-of-theory instruction is a constitutional right only when "evidence to the contrary" undermines the expectation that a general unanimity instruction suffices.  This is true "even where an indictment alleges numerous factual bases for criminal liability."  A habeas petitioner claiming ineffective assistance of counsel, therefore, must allege more than a duplicitous indictment.  He must identify facts and circumstances that raise "a genuine risk" of juror confusion.  These circumstances exist, according to *Holley*, where one count of the indictment includes offenses that would require the government to prove dissimilar facts. *Tucker*, 345 F.3d at 336-37.

Other than his "bare assertion that the error 'was plain and substantially prejudicial to him,'" Tucker has failed to identify facts and circumstances that juror confusion was likely.[3]  This court has previously stated as much in ruling on Tucker's direct appeal: "Tucker does not corroborate his claim of prejudicial error with a modicum of evidence tending to show that the jury was confused or possessed any difficulty reaching a unanimous verdict." *Id.*; *see also Gipson*, 553

---

[3] The jury heard both a general unanimity instruction – "[t]o reach a verdict, all of you must agree. Your verdict must be unanimous" – and an instruction that, to convict, it needed to find Tucker guilty of each element of the offenses beyond a reasonable doubt.

No. 09-41206

F.2d at 457 (no error where appellant does not corroborate claim of prejudicial error with evidence that the jury was confused in reaching unanimous verdict). Because Tucker has failed to make the requisite showing, we find that the district court's finding that counsel's performance was not ineffective despite his decision not to request a unanimity-of-theory instruction was not clearly erroneous.

Tucker further contends that the magistrate judge's proposed findings were clearly erroneous. The magistrate judge's proposed finding was that the "[m]ovant has shown that there could have been a remote possibility that jurors could not have been unanimous in their decision concerning both mailing and materiality, he has wholly failed to show any evidence that they were, in fact, confused, in disagreement, or not unanimous in their decision." Tucker argues that people other than the investors themselves might have placed the documents in the mail, and therefore no juror could have convicted him for one of the thirty offenses listed in the indictment. This argument fails as a matter of law. "The test to determine whether the defendant caused the mails to be used is whether the use was reasonably foreseeable." *United States v. Massey*, 827 F.2d 995, 1002 (5th Cir. 1987) (citation and internal quotation marks omitted). It is of no consequence that a secretary or broker who was not named in the indictment actually placed the documents or payments in the mail on the investor's behalf. Criminal liability attaches when a person "knowingly or willfully" causes another to use the United States mail and commercial interstate carriers to deliver checks and negotiable instruments in furtherance of a scheme or artifice to defraud. *See* 18 U.S.C. § 1341. Under *Massey*, an interpretation that Tucker could foresee his investors using the mails, but not their staff doing so would undoubtedly be unreasonable. Therefore, despite Tucker's argument for juror confusion, the magistrate judge's proposed finding that no confusion existed was not clearly erroneous.

10

Similarly, Tucker's investor-by-investor argument is also inappropriate to a claim based on the lack of a unanimity-of-theory instruction. In *Holley*, a unanimity-of-theory instruction was necessary because the Government's case required proving "dissimilar facts" for each of the offenses contained in a single count of the indictment. 942 F.2d at 928. Without a doubt, Holley's duplicitous indictment casts doubt on the jury's ability to reach a unanimous verdict. Here, however, the Government's case requires proving similar facts for each of the offenses identified in each count of the indictment. To no avail, Tucker attempts to cast doubt on the jury's verdict by highlighting small differences between the investors (*e.g.*, Mr. Kiyomura relied on his broker to mail his check, while Mr. Eichinger might have relied on his secretary). Contrary to Tucker's assertion, a jury could reach a unanimous verdict that Tucker "set forces in motion that foreseeably resulted in such use [of the mails]."

"[A]bsent competent evidence to the contrary," courts should not doubt that jurors understood the general unanimity instruction. *Gipson*, 553 F.2d at 457. Thus, even where an indictment includes multiple offenses within a given count, a unanimity-of-theory instruction is not constitutionally necessary. *Holley*, 942 F.2d at 925-26. Tucker's trial attorney, therefore, did not engage in unreasonable performance by failing to seek an instruction on the unanimity of the jury's theory. Trial counsel does not fall below an objective standard of reasonableness by failing to request a jury instruction to which the defendant is not entitled.

When presented with an ineffective assistance of counsel claim, this court need not address both stages of the *Strickland* inquiry if an insufficient showing is made as to one. *Scheanette v. Quarterman*, 482 F.3d 815, 815-20 (5th Cir. 2007). As discussed *supra*, Tucker has failed to establish that counsel's performance was deficient. Therefore, because Tucker's trial counsel did not

fall below an objective standard of reasonableness by failing to seek an instruction on the unanimity of the jury's theory and, thus, was not ineffective, we need not address the prejudice prong under *Strickland*.

## II. Ineffective Assistance of Appellate Counsel

Tucker also contends that his appellate counsel (on direct appeal) was ineffective for failing to persuade this court that the omission of a unanimity-of-theory instruction was plain error. This argument rests on Tucker's assumption that "[c]learly, the District Court's unanimity instruction and mailing instruction were erroneous . . . ." Tucker argues that this court's refusal to find plain error must have resulted from appellate counsel's sub-par performance. *See Tucker*, 345 F.3d at 336-37. As explained above and in this court's earlier decision, Tucker was not entitled to a unanimity-of-theory instruction. His appellate counsel, therefore, did not engage in unreasonable performance by failing to brief the issue of whether the omission of the instruction was plain error. Even assuming that a unanimity-of-theory instruction would have been appropriate, appellate counsel did not render constitutionally infirm representation by foregoing the instruction. The Supreme Court has recognized "the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review." *Jones v. Barnes*, 463 U.S. 745, 752 (1983). In the present case, Tucker's appellate counsel presented the unanimity argument, and this court rejected it. In this court's opinion, nothing suggests that appellate counsel's performance was to blame.

## CONCLUSION

For the foregoing reasons, Tucker's trial counsel was not ineffective despite the decision not to request a specific unanimity-of-theory jury instruction. Likewise, Tucker's appellate counsel was not ineffective for failing

No. 09-41206

to persuade this court that the jury instructions were incorrect.  Therefore, the judgment of the district court is AFFIRMED.