**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0074n.06

No. 07-3284

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED
Feb 04, 2010
LEONARD GREEN, Clerk**

ANTHONY SHAFER,                              )
                                             )
    **Petitioner-Appellant,**                )      **ON APPEAL** FROM THE
                                             )      UNITED STATES DISTRICT
v.                                           )      COURT FOR THE NORTHERN
                                             )      DISTRICT OF OHIO
JULIUS WILSON, Warden,                       )
                                             )
    **Respondent-Appellee.**                 )      **O P I N I O N**
_____      )

**Before:  MOORE and KETHLEDGE, Circuit Judges, and BERTELSMAN,[*] District Judge.**

    **KAREN NELSON MOORE, Circuit Judge.**  Ohio state prisoner Anthony Shafer

("Shafer") appeals the district court's denial of a writ of habeas corpus under 28 U.S.C. § 2254.

Shafer challenges his convictions on one count of rape and four counts of gross sexual imposition

on four grounds:  (1) improper amendment of the indictment, (2) the trial judge's failure to instruct

the jury that it must agree unanimously on the precise events underlying each conviction, (3)

improper statements made by the prosecutor during closing argument, and (4) ineffective assistance

of counsel.  We **AFFIRM** the district court's judgment that the first three claims are procedurally

defaulted and that the state court's rejection of the fourth claim was not contrary to, or an

unreasonable application of, clearly established federal law.

---

    [*]The Honorable William O. Bertelsman, United States District Judge for the Eastern District
of Kentucky, sitting by designation.

# I. BACKGROUND

The Ohio Court of Appeals found the following facts on direct review of Shafer's conviction and sentence:

Sometime in 1992 or 1993 Shafer met the female victim and her parents at a church in Cleveland and, because of attendance in a weekly Bible study group, became friends. In 1996, at approximately the same time that Shafer's marriage was breaking up, he began to spend more time with that family. He would visit their home several times a week, occasionally cook meals for them, and frequently brought his young sons with him. He soon had a key and free access to the family's home, and he stayed there for several weeks around June 1997, when the family took an extended vacation to Florida.

Both Shafer, then thirty-two years of age, and the parents agree that around 1997 the victim, then age eleven years, acted as though she had a "crush" on him because she would always follow him around, and wanted to be near him or sit on his lap. On one occasion as the family and Shafer were watching a "Jerry Springer Show" dealing with relationships between very young women and much older men, the group joked that maybe Shafer and the victim would marry someday. Shafer claimed that in order to set appropriate boundaries he asked the father whether he could engage in a relationship with the victim when she became eighteen years old, and that the father responded along the lines of, "we'll see." Although the father denied that any such conversation had taken place, Shafer stated that he was shocked and appalled by the response. The parents contended that, at the time, they did not notice anything that would indicate that Shafer and their daughter had engaged in any inappropriate behavior.

In September 1997, Shafer, the parents, and several others decided to form their own non-denominational church and to have Shafer serve as the pastor. To this end, the parents provided him with access to their credit card, bought him a used car for $600 and provided a cell phone and pager. Shafer, who at this time was collecting worker's compensation benefits,[] would also receive any donations from members of the congregation. By September of 1998, the church had not progressed as hoped, was losing money, and was disbanded. It appears some bitterness developed between Shafer and the parents, and he no longer associated with the family.

Sometime in early 1999, the victim was having trouble sleeping and while talking with her mother told, in a limited fashion, about how Shafer had touched her inappropriately and kissed her. While both parents were disturbed by her comments, they took no action until August of 1999, when, in another late-night conversation,

she claimed that he had touched her buttocks, breasts and genital area. The parents then called the police and Cleveland Patrolman Raymond O'Connor took a statement from the victim in which she alleged inappropriate touching, but no conduct which would form the basis for a rape charge. In December of 1999, during an interview with Detective Alan Strickler of the Sex Crimes Unit, she alleged not only inappropriate kissing and touching by Shafer, but also two instances where he had her perform oral sex on him, and one occasion when he had digitally penetrated her in the family's kitchen while her parents and his two sons were watching television in the adjoining living room.

*State v. Shafer*, No. 79758, 2002 WL 31722127, at *1 (Ohio Ct. App. Dec. 5, 2002) (footnote omitted).

A grand jury returned a six-count indictment on May 22, 2000, charging Shafer with two counts of rape under Ohio Rev. Code Ann. § 2907.02 with sexually-violent-predator specifications under § 2971.01 and four counts of gross sexual imposition under § 2907.05. Under "date of offense," the indictment specified "from March 1997 to May 1997" for the rape counts and "from 1997 to 1998" for the gross-sexual-imposition counts. Joint Appendix ("J.A.") at 49-54. On June 23, 2000, the state filed a bill of particulars that added detail about the allegations against Shafer, including that the rapes took place at the victim's home, but repeated the dates provided in the indictment. On October 24, 2000, the state filed an amended bill, adding the victim's name. On March 15, 2001, eleven days before trial, the state filed a second amended bill listing all offenses as having occurred between March 1997 and September 1998. On March 26, 2001, during jury selection, the state appeared to amend the indictment once more, applying the twenty-four-month period of 1997 to 1998 to all counts. At no point did Shafer's attorney object to these amendments.

A jury trial began on March 26, 2001. On cross-examination of Detective Strickler, Shafer's attorney elicited testimony that Strickler believed that the victim was telling the truth and that Strickler believed that Shafer was guilty. In doing so, Shafer's counsel intended to reveal Strickler's

3

early bias against Shafer.  Defense counsel did not later seek an instruction directing the jury not to consider Strickler's opinion statements as evidence of Shafer's guilt.

During closing argument, the prosecutor made four types of comments that Shafer later claimed were improper.  First, the prosecutor argued that the evidence went far beyond the scope of the indictment, claiming "we could be here with a hundred counts of gross sexual imposition" and that there were "three acts of rape." J.A. at 1058-59.  Second, he referred to Shafer as a "pedophile" repeatedly, J.A. at 1059, 1066, 1072, 1074, 1077, 1081, as a "monster," J.A. at 1077, and, sarcastically, as a "real Christian," J.A. at 1064.  At one point, the prosecutor instructed the jury, "If you don't know what a pedophile looks like, just look right over there.  Look right at him.  There is a pedophile sitting right there looking at you." J.A. at 1072.  Third, the prosecutor accused Shafer of lying, J.A. at 1071-72, 1074, 1080, and maligned defense counsel as a "spin doctor" who tried to make a "monster out of this little girl," J.A. at 1063-64, 1067, 1108.[1]  Fourth, the prosecutor implored the jury to convict in order to protect the victim:

> We, as a society, have a duty to do the same thing [the victim's parents] are doing.  We have a duty to protect this child. . . .
> Now it's time for you to do your duty.  Are you going to listen to this liar over there and take the easy way out and say, oh, I don't know.  You know, the sky's not going to open up.  There is not going to be a big booming voice coming from the back of the courtroom and telling you what to do.  You're here as citizens of this community, as thinking individuals, to sift through this and evaluate it, and follow the law.  It's up to you to decide who to believe.  We don't want to hear any of that, well, I thought he did it but –
> You know he did it. . . . This is a tough duty, jury duty.  But this little girl deserves the protection of this community and the protection of the law, and it's up to you as a jury to afford her that protection and to follow the law as the Judge explains it to you. . . . You're bound to well and truly try and a true deliverance make in this case.  And that is, return the only verdict that's consistent with the credible

---

[1]In addition, regarding counsel's argument that Strickler did not investigate adequately, the prosecutor said, "Mr. Peterson knows he's suggesting a ridiculous thing." J.A. at 1079.

4

evidence in this case. Not what this pedophile says every time he slips behind his religious curtain on you.

J.A. at 1078, 1080-81. Defense counsel did not object to any part of the closing argument.

The jury found Shafer guilty of one count of rape and all four counts of gross sexual imposition; it acquitted him of the second rape count. On May 11, 2001, the trial judge sentenced Shafer to six years of incarceration: one year on each count of gross sexual imposition, to run concurrently, and five years for the rape conviction, to run consecutively to the one-year sentence. The trial judge ruled on September 14, 2001 that Shafer was a habitual sexual offender.

Shafer appealed his conviction and sentence, raising eleven assignments of error, including the four currently before us: (1) improper amendment of the indictment to expand the time span during which the rapes allegedly occurred; (2) failure to instruct the jury that it must be unanimous as to the sexual conduct that it finds underlying each of the offenses; (3) improper statements during the prosecutor's closing argument; and (4) ineffective assistance of trial counsel. On December 5, 2002, the Ohio Court of Appeals affirmed Shafer's conviction but vacated his sentence on account of the trial judge's failure to make findings required to impose consecutive sentences. *Shafer*, 2002 WL 31722127, at *13-14.

Shafer appealed to the Ohio Supreme Court, which on April 23, 2003 declined to accept the case for review. *State v. Shafer*, 786 N.E.2d 902 (Ohio 2003). On July 9, 2003, the trial judge resentenced Shafer to the same six-year term of incarceration. Shafer appealed, and the Ohio Court of Appeals affirmed. *State v. Shafer*, No. 83290, 2004 WL 1118805, at *2 (Ohio Ct. App. May 20, 2004). Shafer again appealed to the state supreme court, which on October 13, 2004 again declined to accept the case. *State v. Shafer*, 816 N.E.2d 255 (Ohio 2004).

On July 22, 2004, with his appeal still pending before the Ohio Supreme Court, Shafer filed a habeas petition in federal court. The district court dismissed with leave to refile after Shafer sought certiorari on his sentencing challenge. The U.S. Supreme Court denied certiorari on May 16, 2005, and Shafer refiled his habeas petition on March 21, 2006, raising five assignments of error. On November 9, 2006, the magistrate judge issued a report and recommendation advising that the petition be granted as to Shafer's sentencing claim but otherwise denied. On January 30, 2007, the district judge denied the petition in full. *Shafer v. Wilson*, No. 06-CV-648, 2007 WL 315760 (N.D. Ohio Jan. 30, 2007).

The district court granted a certificate of appealability ("COA") on Shafer's ineffective-assistance-of-counsel and sentencing claims. We expanded the COA to include his claims based on the amendment of the indictment, the jury instructions on unanimity, and the prosecutor's closing argument.

On March 27, 2007, Shafer was released from prison, mooting his sentencing challenge. The other four claims are properly before us, because Shafer remains on post-release control until 2012. *Id.*

## II. ANALYSIS

### A. Standard of Review

In the habeas context, we review a district court's legal conclusions de novo. *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2005). Factual findings that are drawn from state-court rulings rather than independently made are also reviewed de novo. *Id.* In this case, the district court held that Shafer had procedurally defaulted his first three claims and that his claim for ineffective assistance of counsel failed on the merits.

6

The doctrine of procedural default dictates that noncompliance with a state procedural rule will bar habeas review in certain circumstances. *Murphy v. Ohio*, 551 F.3d 485, 501 (6th Cir. 2009). Under *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986), we consider four factors to determine whether a petitioner has procedurally defaulted a claim:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . . Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. . . . [Fourth,] the petitioner must demonstrate under [*Wainwright v.*] *Sykes*, [433 U.S. 72 (1977),] that there was "cause" for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001) (quoting *Maupin*, 785 F.2d at 138) (alterations in the original). If the petitioner cannot show cause and prejudice, he nonetheless can overcome procedural default by demonstrating "that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Sykes*, 433 U.S. at 87-88.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), with respect to any claim adjudicated on the merits by a state court, a federal court cannot grant the writ unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or was "based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d). A state court's decision is "contrary to" federal law if the state court fails to apply the correct governing legal principle from the Supreme Court's decisions or reaches a different conclusion from the Supreme Court on "materially indistinguishable facts." *Terry Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, J., opinion for the Court).

7

A state court's decision is "an unreasonable application of" federal law if the state court applies the correct governing legal principle unreasonably to the facts of the case at bar. *Id.*

**B. Shafer's First Three Claims: Procedural Default**

The district court determined that Shafer procedurally defaulted his first three claims—that the government erroneously was allowed to amend the indictment, that the trial judge failed to instruct the jury properly as to the unanimity requirement, and that the prosecutor made improper comments during closing argument, all in violation of Shafer's due-process and jury-trial rights—based on his failure to object to each of these alleged errors when they occurred at trial.

In reviewing the district court's judgment, we analyze the *Maupin* factors. First, Ohio employs a contemporaneous-objection rule, under which "an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." *State v. 1981 Dodge Ram Van*, 522 N.E.2d 524, 526 (Ohio 1988) (internal quotation marks omitted). Appellate courts nonetheless may review defaulted claims for plain error under Ohio Rule of Criminal Procedure 52(b). Shafer concedes that his trial counsel failed to object to any of the alleged errors. Petr.'s Br. at 24-25. Second, the last state court to render a reasoned opinion in this case, the Ohio Court of Appeals on direct appeal, noted the failure to object, applied plain-error review, and denied Shafer's claims for relief; it therefore "expressly enforced Ohio's contemporaneous objection rule." *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001). Third, the contemporaneous-objection rule is an adequate and independent state ground, reliance upon which forecloses federal review. *Scott v. Mitchell*, 209 F.3d 854, 865-71 (6th Cir. 2000).

8

Thus, Shafer can obtain review on the merits only if he demonstrates cause and prejudice or that a miscarriage of justice will result absent further review. Shafer does not make a cause-and-prejudice argument.[2] Instead, he contends that his indictment-amendment claim is not barred because his lawyer did not have an opportunity to object and that all three claims can be considered under the miscarriage-of-justice exception.

The first argument is baseless. Shafer offers no explanation for why his counsel could not object when he received the second amended bill of particulars on March 15, 2001. And the transcript of the March 26 proceeding makes clear that counsel had ample opportunity to voice his dissent. When the prosecutor brought the amendment to the judge's attention during a break from voir dire, defense counsel three times asked clarifying questions, J.A. at 340, none of them betraying a hint of disagreement. The trial court then summarized for the record, "So you've got a 24 month period. . . . All right, thank you." J.A. at 341. Shafer's argument that in so doing, "the trial court announced its ruling without ever inviting the parties to express their views on an amendment to the indictment," Petr.'s Br. at 29, is unavailing. The judge was not required to invite defense counsel to object; for his part, defense counsel never tried to raise the issue.

Shafer's second argument likewise fails. In claiming that further review is necessary to prevent a fundamental miscarriage of justice, Shafer states the following: with respect to the improper-amendment claim, "any new indictment would have been time-barred under Ohio's speedy trial statute," Petr.'s Br. at 31; with respect to the jury-instructions claim, the trial court's charge

---

[2]Even if Shafer had raised cause and prejudice, any such argument would be rejected. His ground for cause likely would be ineffective assistance of counsel, *see Murray v. Carrier*, 477 U.S. 478, 488 (1986), but as described below, counsel's assistance did not meet the standard for constitutional deficiency or prejudice under *Strickland v. Washington*, 466 U.S. 668 (1984).

9

resulted in "the distinct possibility of conviction by a non-unanimous jury" with regard to the conduct underlying his offenses, *id.* at 36; and with respect to the prosecutor's comments, "[a] review of what was said evinces the miscarriage of justice," *id.* Shafer misunderstands the miscarriage-of-justice exception to procedural default. He appears to believe that it applies when the petitioner's claims of error are particularly strong. To date, however, this exception has been applied only when a habeas petitioner demonstrates that he is actually innocent, *see Carter v. Mitchell*, 443 F.3d 517, 538 (6th Cir. 2006) (citing *Murray*, 477 U.S. at 496); conceivably, other circumstances could give rise to a miscarriage of justice, but Shafer's case does not present any. A petitioner establishes actual innocence only if "it is more likely than not that no reasonable juror would have convicted him" absent the alleged errors. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). Shafer has produced no evidence of innocence that would approach the *Schlup* standard. Accordingly, his first three claims are procedurally defaulted.

## C. Ineffective Assistance of Counsel

The first time Shafer could have raised ineffective assistance of trial counsel was on direct appeal. He raised the issue then and pleaded the claim at every stage of the direct appeal of his conviction, including to the Ohio Supreme Court. There is therefore no problem of procedural default, and we consider the merits of his claim under AEDPA.

A petitioner can establish ineffective assistance of counsel by showing that his attorney's performance was deficient and that the deficiency prejudiced his defense. *Strickland*, 466 U.S. at 687. Attorney performance is deficient if it is unreasonable "under prevailing professional norms." *Id.* at 688. A defendant can establish prejudice by showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

10

*Id.* at 694. Here, Shafer asserts six grounds for his ineffective-assistance-of-counsel claim: (1) failure of trial counsel to object to amendment of the indictment, (2) failure to request a jury instruction on unanimous agreement on the conduct underlying the offense, (3) failure to object to the prosecutor's closing argument, (4) failure to object to improper jury instructions, (5) failure to request that the jury be instructed to consider only those offenses that occurred at the victim's home, the location specified in the bill of particulars, and (6) failure to request an instruction that the jury refrain from considering Detective Strickler's opinion testimony as evidence of Shafer's guilt. We address these grounds seriatim.

**1. Failure to Object to the Improper Amendment of the Indictment**

The Ohio state constitution specifies that "no person shall be held to answer for a capital, or otherwise infamous, crime, unless on presentment or indictment of a grand jury." Ohio Const. art. I, § 10; *see also* Ohio R. Crim. P. 7(A) (providing the grand-jury right for all felonies). In this case, the original indictment specified the dates "from March 1997 to May 1997" for the alleged rapes, but the evidence was that any rapes took place after the victim's family returned from its June 1997 vacation to Florida. Shafer contends that his trial attorney rendered deficient performance when he failed to object to the prosecution's amendment of the indictment to reflect a period through 1998.

In support of his argument, Shafer points to *State v. Vitale*, 645 N.E.2d 1277 (Ohio Ct. App. 1994). In *Vitale*, a man was indicted for theft after failing to pay for car repairs. The defendant had retrieved his car from the repair shop on June 14, 2001, then dropped it off at the repairman's home on June 21, 2001, and again retrieved it that same day, all without making payment. The original indictment specified an offense date of June 14. At the conclusion of the prosecution's case, the trial court permitted an amendment of the indictment to reflect an offense date of "June 14, 1991 through

11

June 21, 1991, inclusive." *Id.* at 1278-80. This was a bench trial, and the judge acquitted the defendant of any offense on June 14 but convicted him based on the June 21 conduct. The Ohio Court of Appeals reversed. That court noted that the state constitution "provides an inalienable protection to the defendant that he will be tried on the same essential facts on which the grand jury found probable cause." *Id.* at 1279. It then held, "[w]here the amendment to an indictment requires proof of an essential factual element which the original indictment did not, the amendment of the indictment changed the identity of the crime charged in contravention of [Rule] 7(D)."[3] *Id.* at 1280 (internal quotation marks omitted).

Here, the state appellate court attempted to distinguish Shafer's case from *Vitale* in the following three ways: (1) offense date is not an essential fact of the crime of rape; (2) "the ultimate issue . . . is *if* Shafer raped the victim, not *when*"; and (3) the rape count is part of a series of alleged incidents over a period of time, rather than "one discreet [sic] act." *Shafer*, 2002 WL 31722127, at *4. This effort is not convincing. If offense date is or is not an essential fact of theft, then it is or is not an essential element of rape; the *Vitale* court treated the date as essential only because it was specified in the indictment. The if/when distinction, meanwhile, is equally applicable to theft and rape. And the fact of being charged with a single offense as opposed to multiple offenses has little relevance to the issue at the core of *Vitale*: whether the defendant "was convicted on the same evidence on which he was indicted." 645 N.E.2d at 1280.

Nonetheless, Shafer is not entitled to relief. Shafer's federal claim is for ineffective assistance of counsel. The court that denied his direct appeal, the Ohio Court of Appeals for the

_____

[3]Ohio Rule of Criminal Procedure 7(D) provides: "The court may . . . amend the indictment . . . provided no change is made in the . . . identity of the crime charged."

12

Eighth District, is the same court that decided *Vitale*. Generally, a federal court has no review power over a state court's perceived error in interpreting (or overruling, sub silentio) its own precedents on matters of state law. *See Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir. 1988). It would be another matter if Shafer could show that counsel failed to raise a clear error of state law, for such an omission could fall below the prevailing standard of representation. But *Vitale* may not have provided the governing rule when Shafer's appeal was decided in 2002. In another state appellate decision, *State v. Murrell*, 595 N.E.2d 982 (Ohio Ct. App. 1991), a state court denied a claim that the trial judge erred in allowing amendment of the indictment to expand the dates during which sexual abuse allegedly occurred. *Id.* at 984.[4] In light of these conflicting state appellate-court decisions, we cannot say that Shafer's counsel acted unreasonably in failing to object to the amendment.

## 2. Failure to Request Jury Instruction on Unanimity

Shafer's next ground is his trial attorney's failure to request that the judge instruct the jury that it must unanimously agree "as to the conduct that the jury believed constituted a particular offense." Petr.'s Br. at 32. Without that instruction, the argument goes, the jury may have convicted even though hypothetically only four jurors believed that Shafer had digitally penetrated the victim and hypothetically only eight jurors believed that the victim had performed oral sex on Shafer. In denying relief, the state court relied on *State v. Thompson*, 514 N.E.2d 407 (Ohio 1987), which addressed this exact claim. In that case, a defendant charged with rape worried that the jury may

---

[4]To be sure, *Murrell* was a decision of the Twelfth District appellate court, while *Vitale* governed in the Eighth District. In a case decided more than three months before *Shafer*, however, the Eighth District cited *Murrell* approvingly in distinguishing *Vitale*. *See State v. Griffin*, No. 80499, 2002 WL 1938250, at *8 (Ohio Ct. App. Aug. 22, 2002).

have convicted even though some jurors may have found him guilty of vaginal rape and others may have found him guilty of anal rape. The court noted that the rape statute, the same involved here, criminalized "sexual conduct" and that "sexual conduct" included both vaginal and anal intercourse. Ohio Rev. Code Ann. §§ 2907.02(A), 2907.01(A).[5] It held, "[t]he statute simply does not require, as appellant asserts, that a specific finding be made as to the *type* of rape. . . . The fact that some jurors might have found that appellant committed one, but not the other, type of rape in no way reduces the reliability of appellant's conviction, because a finding of either type of conduct is sufficient to establish the fact of rape in Ohio." 514 N.E.2d at 417-18. *Thompson* thus governs Shafer's claim with respect to the rape counts. Its logic also extends to his claim with respect to the gross-sexual-imposition counts. The relevant statute criminalizes "sexual contact" with a nonspouse less than thirteen years old, and "sexual contact" is defined to include "any touching of an erogenous zone of another." Ohio Rev. Code Ann. §§ 2907.05(A)(4), 2907.01(B).

Shafer responds that his case is governed by *State v. Johnson*, 545 N.E.2d 636 (Ohio 1989). That case held that "if a single count can be divided into two or more 'distinct conceptual groupings,' the jury must be instructed specifically that it must unanimously conclude that the defendant committed acts falling within one such grouping in order to reach a guilty verdict." *Id.* at 644. As the state court here noted, *Johnson* cited the Fifth Circuit case *United States v. Gipson*, 553 F.2d 453 (5th Cir. 1977), for this proposition. *Gipson* concerned a statute that prohibited selling or receiving a stolen vehicle and that criminalized six discrete acts. The court held that those six acts could be divided into two distinct groupings—receiving, concealing, and storing, on the one hand; bartering,

___

[5]For the rape statute, "sexual conduct" also includes "the insertion, however slight, of any part of the body . . . into the vaginal or anal opening of another." Ohio Rev. Code Ann. § 2907.01(A).

14

selling, and disposing, on the other—which had separate unanimity requirements. *Id.* at 458-59. We agree with the state court that the statutes in Shafer's case are not similarly divisible. Each criminalizes one general type of conduct: for rape, penetration of some sort, and for gross sexual imposition, unwanted touching of private areas. Therefore, under both *Thompson* and *Johnson*,[6] Shafer's trial attorney would have had no legal basis for requesting an additional unanimity instruction.[7]

### 3. Failure to Object to Prosecutor's Closing Argument

Shafer next argues that his trial attorney rendered ineffective assistance in failing to object to the prosecutor's closing argument. He identifies the following categories of impermissible remarks: (1) statements that Shafer committed many more acts of sexual abuse than were contained in the indictment; (2) references to Shafer as a pedophile, monster, and religious hypocrite; (3) accusations that Shafer was a liar and his trial attorney a "spin doctor"; and (4) entreaties that the jury do its duty to protect the victim by convicting Shafer. The state court of appeals deemed the fourth class of comments improper. It also stated that the "spin doctor" epithets were not prejudicial. The court held that the improper comments, taken together, "did not undermine the fairness of the proceedings against Shafer or prejudice[] his ability to have a fair trial." *Shafer*, 2002 WL 31722127, at *9.

---

[6]In *Johnson* itself, the court found that four types of conduct that could serve as predicates for aggravated murder were not separate conceptual groupings. These included murder while committing aggravated robbery, murder while attempting to commit aggravated robbery, murder while fleeing immediately after committing aggravated robbery, and murder while fleeing immediately after attempting aggravated robbery. 545 N.E.2d at 644-45.

[7]Shafer has not put forth any federal-law cases that would require this kind of instruction.

15

Under *Darden v. Wainwright*, 477 U.S. 168 (1986), the critical inquiry is "whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* at 181 (internal quotation marks omitted). We have no difficultly concluding that the prosecutor's comments here were highly improper. Indeed, they were completely out of bounds, textbook examples of what a prosecutor should *not* be permitted to say during closing argument. The statements challenged here, particularly the prosecutor's disparagement of defense counsel and insistence that "[t]here is a pedophile sitting right there looking at you," were obviously calculated "to incite the passions and prejudices of the jurors." *Durr v. Mitchell*, 487 F.3d 423, 439 (6th Cir. 2007) (internal quotation marks omitted). The case boiled down to a credibility contest between Shafer and the victim. The prosecutor denounced Shafer as a pedophile, a monster, and a hypocrite to undermine Shafer's credibility with the jury on nonevidentiary grounds.

We need not decide whether the comments were so flagrant as to undermine fundamental fairness, however, because there is an altogether separate reason that counsel's failure to object does not violate the Sixth Amendment: it appears to have been strategic. Immediately after the prosecutor delivered the first part of his closing argument, which contained almost all of the remarks at issue, Shafer's counsel rose for his response. After thanking the jury and judge, he immediately addressed the improper comments:

> [I]f we would take Mr. Rukovena's side in the case and his argument to you, we wouldn't need any trials. We'd just need an execution. That's it. Just an execution of everybody that's charged with a crime. We'd just execute the defendant. Cut his head off. He's a liar. He's a pedophile. What's the use of having a trial?
>
> What's the use of you, ladies and gentlemen? We've got fourteen people here, twelve jurors and two alternates, what do we need you for? Everybody on the defense is a liar. Peterson's a liar. The defendant's a liar. His statement that he voluntarily gave to the police, that's all BS.

16

> . . . [W]e call [the prosecutor] God Rukovena now because he could look at . . . everything that my client's said in his statement, that's a total lie.

J.A. at 1081-83. Counsel went on to emphasize the jury's duty and the beyond-a-reasonable-doubt standard. J.A. at 1085-86. He also told the jury that "bias and sympathy do not enter into this trial" and reminded the jury that the lawyers' arguments are not evidence. J.A. at 1100-01. These remarks indicate that trial counsel chose not to object, preferring to respond to the prosecutor directly. His strategy was to expose the state's case as based on emotion rather than evidence. While a strategic decision may be the basis for an ineffective-assistance-of-counsel claim if it is "so ill-chosen that it permeates the entire trial with obvious unfairness," *Hughes v. United States*, 258 F.3d 453, 457 (6th Cir. 2001), Shafer's attorney's conduct cannot be described this way.

### 4. Failure to Object to Improper Jury Instructions

The district court rejected this claim because Shafer "did not specify what part of the jury instructions was objectionable." *Shafer*, 2007 WL 315760, at *6. Shafer's brief on appeal provides no further detail, simply listing this ground among many in a heading. *See* Petr.'s Br. at 45. We therefore deny the claim as well.

### 5. Failure to Request that the Jury Be Instructed to Confine Its Consideration to the Bill of Particulars

The bill of particulars specified that the alleged incidents of gross sexual imposition occurred at the victim's home. At trial, the victim testified to an incident during which Shafer allegedly fondled her breasts and buttocks at his mother's home. Shafer contends that his lawyer should have requested a limiting instruction that the jury could convict only on the basis of events that took place at the victim's home.

Once again Shafer raises the relevance of *Vitale*, in which the Ohio Court of Appeals held that "the state should be restricted in its proof to the indictment and the particulars as set forth in the bill." 645 N.E.2d at 1280 (internal quotation marks omitted). The state court of appeals in Shafer's case rejected this argument based on the Ohio Supreme Court's decision in *State v. Lawrinson*, 551 N.E.2d 1261 (Ohio 1990). The main holding of *Lawrinson* was that upon request the state must provide a more specific bill of particulars when it possesses the requested information. *Id.* at 1262. *Lawrinson* provided that whether to provide more specific information as to dates, times, or places depended on two questions: "whether the state possesses the specific information requested by the accused, and whether this information is material to the defendant's ability to prepare and present a defense." *Id.* The case said nothing about the problems created by the introduction of evidence that would support a conviction based on details other than those specified in the indictment. Thus, we do not see how the state court relied on *Lawrinson* to overcome *Vitale*.

Nonetheless, we deny relief based on Shafer's inability to establish the prejudice prong of ineffective assistance of counsel. Even if we assume that a limiting instruction was warranted and that defense counsel was ineffective in failing to request one, it is not reasonably probable that the jury would have returned fewer than four convictions for gross sexual imposition had the instruction been given. As the state court noted, the victim testified to "numerous, weekly instances of [gross sexual imposition] that occurred *at her home*." *Shafer*, 2002 WL 31722127, at *7 (emphasis added).[8]

---

[8]Shafer has not raised a due process claim under *Valentine v. Konteh*, 395 F.3d 626 (6th Cir. 2005). In that case, we affirmed a district court judgment granting the writ of habeas corpus to a defendant who was convicted of twenty identically worded counts of child rape and twenty identically worded counts of felonious sexual penetration. *Id.* at 628. The indictment made no distinctions among the offenses, and the multiplicity of counts was based on the victim's testimony

18

### 6. Failure to Request Jury Instruction Regarding Strickler's Testimony

Finally, Shafer argues that his trial counsel was ineffective in failing to request a jury instruction on the permissible use of Detective Strickler's testimony. On cross-examination, Shafer's attorney asked Strickler's opinion of Shafer's and the victim's credibility, hoping to elicit evidence of Strickler's bias. Strickler responded that he believed the victim's version of the events and that he believed Shafer was guilty. J.A. at 897, 902. While Shafer recognizes that this line of questioning was strategic, he argues that counsel should have asked the judge to instruct the jury not to consider Strickler's testimony as substantive evidence of Shafer's guilt.

The state court rejected this argument, finding no authority that such an instruction actually would have been given had it been requested. *Shafer*, 2002 WL 31722127, at *11. In contrast, the district court believed that an instruction should have been given because "[a]s a police officer, Strickler's testimony could have improperly influenced the jury's ability to serve as fact finders." *Shafer*, 2007 WL 315760, at *9. Nonetheless, the district court denied relief based on the lack of prejudice: "the net result of Strickler's testimony here is at worst mixed for the Petitioner as the jury may very well have found that Strickler was in fact less credible because he was biased." *Id.* Given that a trial court may not have granted a jury instruction after defense counsel strategically extracted Strickler's testimony, and given the unlikelihood that the omission of such instruction affected the outcome of the trial, we conclude that Shafer has not established ineffective assistance of counsel.

---

that particular abuse scenarios occurred an estimated ten, fifteen, or twenty times. *Id.* We stated that the defendant there "was prosecuted and convicted for a generic pattern of abuse rather than for forty separate abusive incidents." *Id.* at 634. Accordingly, we held that the prosecution's failure to distinguish among the counts deprived the defendant of his right to notice of the precise charges against him and of his right to protect himself against double jeopardy. *Id.* at 631. Because Shafer never raised the issue—either in state court or in his federal habeas petition—we have no power to consider the application of *Valentine* to his case.

19

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's judgment denying Shafer's habeas petition.